UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE WOOLLEY,

          Plaintiff,        Civil Action No. 13-15175
                                  Honorable Arthur J. Tarnow
                                  Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 17]**

Plaintiff Duane Woolley ("Woolley") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 17], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Woolley is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [17] be DENIED, Woolley's Motion for Summary Judgment [14] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of

benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

## II.  REPORT

### A.  Procedural History

On April 19, 2011, Woolley filed applications for DIB and SSI, alleging a disability onset date of December 1, 2008.[1] (Tr. 151-65). These applications were denied initially on August 26, 2011. (Tr. 64-71). Woolley filed a timely request for an administrative hearing, which was held on September 17, 2012, before ALJ Andrew Sloss. (Tr. 29-45). Woolley, who was represented by attorney Rebecca Sposita, testified at the hearing, as did vocational expert Stephanee Leech. (*Id.*). On September 24, 2012, the ALJ issued a written decision finding that Woolley is not disabled. (Tr. 19-25). On October 21, 2013, the Appeals Council denied review. (Tr. 2-7). Woolley filed for judicial review of the final decision on December 19, 2013. (Doc. #1).

### B.  Background

#### 1.  *Woolley's Reports and Testimony*

At the time of the September 2012 administrative hearing, Woolley was 53 years old. (Tr. 32). He had dropped out of school in eleventh grade and subsequently worked in various assembler positions in factories. (Tr. 32, 179). Woolley testified that he stopped working in 2010 when he was fired for not having a high school diploma or its equivalent. (Tr. 32, 35).

Woolley indicated that he suffers from back pain and emphysema, which prevent him from working. (Tr. 32-34, 178). He testified that he has had back pain since he broke his back in 1992, but that the pain has "gotten worse" and is now a 7/10 on the pain scale constantly. (Tr. 33, 39, 214). Every couple of weeks, he experiences back spasms – where his back "goes out

---

[1] Woolley subsequently amended his applications to reflect an alleged disability onset date of December 1, 2010. (Tr. 173).

and [he] can't move." (Tr. 38). He has been diagnosed with arthritis in his back (as well has his wrists, hips, and knees), but no back surgery has been proposed and the only treatment he receives for his pain is medication. (Tr. 33, 37). He testified that he can sit or stand for only ten minutes before his legs go numb; can walk only ¼ mile before his legs get sore and tired; and can lift only ten pounds without back pain. (Tr. 36-37). Woolley further testified that his emphysema causes chest tightness, difficulty breathing, and wheezing. (Tr. 33). He uses inhalers to control this condition. (Tr. 34).

Woolley indicated that he is able to drive, prepare meals, do some housework, perform some outside chores (such as mowing the lawn), care for his dogs, and go shopping. (Tr. 35, 203-05). He has difficulty sleeping because of back pain. (Tr. 38, 203). He has no problem with personal care. (Tr. 203). He reported that he is able to pay bills, count change, and handle a checking and savings account. (Tr. 205).

### 2. Medical Evidence

The Court has thoroughly reviewed Woolley's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Stephanee Leech testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 40-43). The VE characterized Woolley's past relevant work as an assembler/inspector as unskilled in nature and performed at the medium exertional level. (Tr. 230). The ALJ asked the VE to imagine a claimant of Woolley's age, education, and work experience, who could perform light work, except that he cannot constantly push and pull with his lower extremities; can never climb ladders, ropes, or scaffolds, but can frequently climb

3

ramps or stairs; can frequently balance; can occasionally stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to extreme heat, cold, humidity, fumes, odors, dust, and gases. (Tr. 41-42). The VE testified that the hypothetical individual would not be capable of performing Woolley's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in the jobs of office clerk (4,000 jobs in Michigan's lower peninsula), reception/information clerk (2,000 jobs), and bench assembler (2,000 jobs). (Tr. 42).

### C. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work

experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Woolley is not disabled under the Act. At Step One, the ALJ found that Woolley has not engaged in substantial gainful activity since December 1, 2008, the initial alleged onset date. (Tr. 21). At Step Two, the ALJ found that Woolley has the severe impairments of degenerative disc disease and chronic obstructive pulmonary disease. (*Id.*). At Step Three, the ALJ found that Woolley' impairments do not meet or medically equal a listed impairment. (Tr. 22).

The ALJ then assessed Woolley's residual functional capacity ("RFC"), concluding that he is capable of performing light work, except that he cannot constantly push and pull with his lower extremities; can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to extreme heat, cold, humidity, fumes, odors, dust, and gases. (Tr. 22-24).

At Step Four, the ALJ determined that Woolley is unable to perform his past relevant work as an assembler/inspector. (Tr. 24). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Woolley is capable of performing a significant number of jobs that exist in the national economy. (Tr. 24-25). As a result, the ALJ concluded that Woolley is not disabled under the Act. (Tr. 25).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

  **F.**  **Analysis**

In his motion for summary judgment, Woolley argues that both the ALJ's RFC finding and his credibility determination are not supported by substantial evidence. (Doc. #14 at 10-15). Woolley does not, however, challenge the ALJ's Step Three analysis in this case, the entirety of which reads as follows:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

(Tr. 22). While the ALJ certainly need not compartmentalize his entire Step Three analysis to any particular location in his written decision, *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) ("the procedure [is not] so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis.") (citing *Bledsoe v. Barhart*, 165 F. App'x 408, 411 (6th Cir. 2006), here, *nowhere* in his decision does the ALJ specify what Listing (or Listings) he purportedly considered. Nor does he explain *why* he concludes that Woolley's

7

impairments do not meet or medically equal a Listed Impairment. As set forth in greater detail below, the ALJ's Step Three analysis is so lacking and so inadequate – particularly given the medical evidence in the record suggesting that Woolley's COPD could, in fact, meet the requirements of Listing 3.02(A) ("Chronic Pulmonary Insufficiency") – that remand is necessary.[2]

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). Failure to provide sufficient articulation of Step Three findings is error. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012); *Reynolds*, 424 F. App'x at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2011) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section"). This is because under the Act:

> The Commissioner of Social Security is directed to make findings of fact,

---

[2] The Court raises this issue *sua sponte*, given the serious nature of the error. Courts have recognized that, in Social Security cases, the failure to submit a particular legal argument is "not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte*, that grounds exist for reversal. *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. Nov. 27, 2012) (citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *2-3 (E.D. Mich. Dec. 27, 2010)), *adopted by* 2013 WL 53855, at *1 (E.D. Mich. Jan. 3, 2013); *see also Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at *3-4 (Sept. 25, 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly). Moreover, the rule that an ALJ "evaluate the evidence," compare it to the Listing, and "give an explained conclusion" is "prudential and not jurisdictional," meaning that it is impossible to determine whether substantial evidence supports an ALJ's determination without this analysis. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

>and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. §405(b)(1).

As explained in the oft-cited Tenth Circuit opinion in *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996):

>This statutory requirement fits hand in glove with our standard of review. By congressional design, as well as by administrative due process standards, this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration. Rather, we review the Secretary's decision only to determine whether [his] factual findings are supported by substantial evidence and whether [he] applied the correct legal standards.

Thus, in numerous cases similar to this one, courts have recognized that the failure of an ALJ to explicitly consider whether a claimant's impairments meet or medically equal a Listed Impairment constitutes legal error. For example, in *Bolla v. Comm'r of Soc. Sec.*, 2012 WL 884820, at *6-8 (E.D. Mich. Feb. 3, 2012), the ALJ concluded at Step Two that the plaintiff had the severe impairments of multiple sclerosis and depression, but then simply stated, in conclusory fashion, that "the impairments, or combination of impairments, do not meet or medically equal the specific criteria of 1.00 Musculoskeletal Symptoms, 11.00 Neurological, 12.00 Mental Disorders." *Id.* at *6. The ALJ specifically considered the plaintiff's depression in light of Listing 12.04 (affective disorders), but did not consider any other listing – including Listing 11.09 (multiple sclerosis) – in any detail whatsoever. *Id.* In concluding that the ALJ had erred in performing his Step Three analysis, the *Bolla* court held that the "ALJ's lack of narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact …." *Id.* Consequently, the *Bolla* court determined that remand was

appropriate.

Similarly, in *Christephore*, *supra*, the court held that the ALJ erred in failing "to evaluate (or even mention) the relevant listing" when determining medical equivalence at Step Three. *Christephore*, 2012 WL 2274328, at *5. In that case, the ALJ concluded that the plaintiff had the severe impairment of HIV, but then failed to consider whether the plaintiff met or medically equaled Listing 14.08 (HIV infection), saying only that the plaintiff's impairments did not meet or medically equal Listing 14.00 (Immune System Disorders). *Id.* at *5-6. In concluding that the ALJ erred, the court explained:

> The ALJ does not evaluate Plaintiff's physical symptoms in relation to those described in 14.00 and does not articulate his reasons for finding that Plaintiff's symptoms do not meet or equal those criteria. His conclusory, one-sentence statement that Plaintiff's impairments do not meet or medically equal the criteria of 14.00 is contrary to the requirements that ALJs explain the reasons for their decisions.

*Id.* at *6. A similar conclusion was reached in *M.G.*, where "the ALJ did not cite, discuss, or resolve any conflicts in the evidence in concluding that [the claimant] did not meet or medically equal a Listing. Nor did the ALJ even identify which Listing(s) [claimant's] impairments were compared with." *M.G.*, 861 F. Supp. 2d at 858 (citing *Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 820 (S.D. Ohio 2001) ("whether or not plaintiff came forward with the requisite evidence at Step 3, the ALJ was required to discuss that evidence, relative to the Listings…")); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d Cir. 2000) ("Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of social security disability proceedings which are inquisitorial rather than adversarial and in which it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.").

In this case, the ALJ did not specify the Listings he claimed to have considered. Rather,

10

in one of the decision's headings, the ALJ said only that Woolley "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments….[3]" (Tr. 22).  As set forth above, this is wholly inadequate.  Moreover, the ALJ cites no evidence – whether medical, testimonial, or otherwise – supporting his conclusion that Woolley did not meet or medically equal a Listing.  Indeed, it appears that the entirety of the ALJ's Step Three "analysis" consists of nothing more than the conclusory, uninformative heading quoted above, without any accompanying explanation or analysis.  Because the ALJ concluded at Step Two that Woolley suffers from the severe impairment of chronic obstructive pulmonary disease ("COPD"), it would seem that the ALJ should have compared this impairment against Listing 3.02(A) (Chronic Pulmonary Insufficiency – Chronic Obstructive Pulmonary Disease).[4]  His failure to do so constitutes legal error.  *See e.g.*, *M.G.*, 861 F. Supp. 2d at 858-59; *Bolla*, 2012 WL 884820, at \*6-8.

This Court will not, however, overturn an ALJ's decision if the failure to articulate Step Three findings was harmless.  *See M.G*, 861 F. Supp. 2d at 859.  Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled…." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at \*5-6 (E.D. Tenn. Mar. 1, 2010)) (internal quotations omitted) (emphasis in original).  In cases where the evidence is such that a possibility

---

[3] The ALJ's statement actually went on to say, "in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926."  (Tr. 22).  But Appendix 1 simply provides *all* of the Listings, and the referenced regulations merely provide general rules for analyzing them and other aspects of a disability claim.  In short, it is impossible to determine from the ALJ's decision which Listing(s) he claims to have considered.

[4] The ALJ also found at Step Two that Woolley suffers from the severe impairment of degenerative disc disease, but he failed to consider whether Woolley meets or medically equals the criteria of Listing 1.04 ("Disorders of the Spine").  On remand, the ALJ should explicitly undertake this analysis as well.

exists that a listing is met, remand is appropriate. *See Reynolds*, 424 F. App'x at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011).

In order to determine whether the ALJ's error was harmless, the Court must consider the evidence in light of the requirements of the applicable Listing. Here, the introduction to the "Respiratory System" portion of the Listings notes that impairments caused by chronic disorders of the respiratory system – such as COPD – generally produce irreversible loss of pulmonary function. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00(A). Common symptoms of such impairments include dyspnea (difficult or labored breathing) on exertion, cough, wheezing, and chest pain. *Id.* The regulations further provide that:

> Because these symptoms are common to many other diseases, a thorough medical history, physical examination, and chest x-ray or other appropriate imaging technique are required to establish chronic pulmonary disease. Pulmonary function testing is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings.

*Id.* And, more specifically, in order for Woolley to meet the criteria of Listing 3.02(A), he must show: "Chronic obstructive pulmonary disease due to any cause, with the $FEV_1$[5] equal to or less than the values specified in table I corresponding to the person's height without shoes." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.02(A). Review of the table referenced reveals that for an individual of Woolley's height (69 inches (*e.g.,* Tr. 238, 258, 260, 277)), <u>an $FEV_1$ equal to or less than 1.45 is required in order to meet the requirements of this Listing</u>.[6] *Id.*

---

[5] $FEV_1$ refers to the volume of air that can be forcibly exhaled from the lungs in the first second of a forced expiratory maneuver. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00(A).

[6] The regulations instruct that the $FEV_1$ value used "should represent the largest of at least three satisfactory forced expiratory maneuvers." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing

In this case, a January 2012 chest x-ray showed that Woolley had lung changes "due to mild COPD." (Tr. 278). At a follow-up visit to his primary care physician, Douglas Benton, D.O., on February 6, 2012, Woolley was notified of the results of this test and was formally diagnosed with COPD. (Tr. 260-61). That same day, a pulmonary function test was performed, the results of which appear to establish that Woolley's $FEV_1$ was 1.44. (Tr. 277). These results, which were characterized as "Abnormal," further indicate that Woolley's "Lung Age" was 127 years. (Tr. 277, 286). A notation at the bottom of this report indicates as follows: "Testing indicates moderate obstruction as well as low vital capacity, possibly from a concomitant restrictive defect." (Tr. 277).

Although the ALJ briefly mentioned these test results in his decision, he said nothing more than: "Pulmonary function testing performed February 6, 2012, confirmed moderate obstructive airway disease as well as low vital capacity." (Tr. 23 (internal citation omitted)). The ALJ did not discuss these test results in the context of his Step Three analysis, nor did he mention Woolley's $FEV_1$ value – which appears to be sufficient to meet Listing 3.02(A) – anywhere in his decision. Simply put, this Court cannot discern whether the ALJ took note of Woolley's $FEV_1$ value of 1.44 and compared it to the Listing's requirements. Under the circumstances, it certainly appears at least possible that Woolley satisfied Listing 3.02(A)'s criteria.

While the ALJ's analysis of the salient issues remains to be seen on remand, at least on the present record, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that Woolley does not satisfy the relevant Listing. And,

---

3.00(E). The largest value among the test results is to be used, whether that value is from the claimant's pre-bronchodilator or post-bronchodilator testing. *See Gwizdala v. Comm'r of Soc. Sec.*, 1999 WL 777534, at *4 (6th Cir. Sept. 16, 1999); *Joshua v. Comm'r of Soc. Sec.*, 2009 WL 1107681, at *6 (E.D. Mich. Apr. 23, 2009).

13

it is not the Court's role to make such factual determinations in the first instance. *See Clifton*, 79 F.3d at 1009; *Bolla*, 2012 WL 884820, at *6. Accordingly, the matter should be remanded to the ALJ so that he may directly address the issues raised herein.

In sum, the Court cannot say that the ALJ's Step Three error was harmless, and remand is appropriate. *See Reynolds*, 424 F. App'x at 416.[7]

### III. CONCLUSION

For foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [17] be DENIED, Woolley's Motion for Summary Judgment [14] be GRANTED IN PART to the extent it seeks remand, DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

Dated: October 31, 2014                    s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

---

[7] Woolley also argues that both the ALJ's residual functional capacity finding and his credibility determination are not supported by substantial evidence. (Doc. #14 at 10-15). Because this Court concludes that the ALJ erred in his Step Three analysis, however, and recommends that this matter be remanded to the ALJ for a determination as to whether Woolley meets the criteria of the Listings in question, it need not consider these issues.

*Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 31, 2014.

> s/Eddrey O. Butts
> EDDREY O. BUTTS
> Case Manager